**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION**

CHRISTOPHER BOYLE,

    Plaintiff,

                                                Case No. 11-CV-12089-DT

v.

                                                HONORABLE DENISE PAGE HOOD

BLUE CROSS BLUE SHIELD OF NORTH
CAROLINA and CONTINENTAL AUTOMOTIVE,
INC. WELFARE BENEFITS PLAN,

    Defendants.
_____/

**ORDER GRANTING DEFENDANT'S MOTION TO AFFIRM
PLAN ADMINISTRATOR'S DENIAL OF BENEFITS
and
ORDER DISMISSING ACTION**

**I.    BACKGROUND/FACTS**

On May 11, 2011, Plaintiff Christopher Boyle "Boyle" filed a Complaint against Defendant Blue Cross Blue Shield of North Carolina ("BC/BS-NC"). A stipulated order to amend the Complaint to substitute the defendant was filed on July 18, 2011. An Amended Complaint[1] adding Defendant Continental Automotive, Inc. Welfare Benefits Plan ("Continental") was filed on August 12, 2011 alleging: a claim under 29 U.S.C. § 1132(a)(1)(B) to recover full health care benefits (Count I); Breach of Fiduciary Duty under 29 U.S.C. § 1132(a)(2) (Count II); and, Equitable Relief under 29 U.S.C. § 1132(a)(3) (Count III). In lieu of an Answer, Continental filed the instant Motion to Affirm Plan Administrator's Denial of Benefits. A response and reply brief have been filed and a hearing held on the matter.

---

[1] The only defendant identified in the Amended Complaint is Continental Automotive, Inc. Welfare Benefits Plan. Accordingly, the defendant identified in the initial Complaint, Blue Cross Blue Shield of North Carolina, is DISMISSED.

Boyle is the father and legal guardian of a minor child who suffers from a condition known as autism. (Am. Comp., ¶ 7) The child is insured as a dependent under Continental's health plan within the meaning of the Employment Income Security Act of 1974 ("ERISA"). (Am. Comp., ¶ 8) Continental refuses to provide or allow for coverage for a scientifically validated and beneficial treatment for autism from which the minor child suffers–Applied Behavior Analysis ("ABA"). (Am. Comp., ¶ 9)

Autism is a complex developmental disability which adversely affects verbal and nonverbal communication and social interactions, a child's educational performance, and the overall ability of a person who suffers from the condition to function in society. (Am. Comp., ¶ 19) Without proper care, treatment, and therapy, autism can be a debilitating and entirely disabling condition, leading people to grow into adulthood without the ability to perform the most basic functions. (Am. Comp., ¶ 20) The medical community has recognized that autism is one of five pervasive developmental disorders. (Am. Comp., ¶ 21) Pervasive developmental disorders are a category of neurological disorders characterized by severe impairment in several areas of development, which generally result in abnormal social interaction and communication, severely restricted interests, and highly repetitive behavior. (Am. Comp., ¶ 22) Autism is the most common of the pervasive development disorders. (Am. Comp., ¶ 23) Autism begins manifesting itself during infancy or early childhood, and can manifest itself in a variety of ways. (Am. Comp., ¶ 25) The characteristic behavior of autistic individuals includes: impaired social interaction; impaired communication abilities; restricted interests; repetitive behavior; stereotyped movements; resistance to environmental change or change in daily routines; obsessive attachment to objects; decreased motor skills; tantrums; apparent ovesrsensitivity or under-sensitivity to pain; fearlessness; aloofness; and

unusual responses to sensory experiences.  (Am. Comp., ¶ 27)

Boyle believes that the growing numbers of autistic children in America today is driving Continental's denial of coverage for treatment of this condition.  (Am. Comp., ¶ 35)  The average annual growth rate for the prevalence of autism in Michigan was 15% per year from 1992 to 2003.  (Am. Comp., ¶ 44)  By denying coverage for the most validated and sound treatment available for this condition, Continental is wrongfully withholding payment for tens of millions of dollars in claims as well as dissuading parents from seeking treatment for their children.  (Am. Comp., ¶ 45)

ABA is a scientifically valid and medically accepted treatment for autism, which enables autistic people to learn and perform functions that they would not otherwise be able to accomplish.  (Am. Comp., ¶ 48)  ABA teaches social, motor, and verbal behaviors, as well as reasoning skills.  (Am. Comp., ¶ 49)  ABA treatment uses intensive behavioral therapy.  (Am. Comp., ¶ 50)  The positive benefits of ABA are less likely if the child does not receive early intervention.  (Am. Comp., ¶ 56)  The State of Michigan's Insurance Commissioner has held that ABA is a reasonable, safe, and necessary treatment for children with autism and is not an experimental treatment.  (Am. Comp., ¶¶ 61-62)  Intense behavioral intervention for children with autism is the standard of care as recommended by the American Academy of Pediatrics and is an appropriate therapeutic management of autism.  (Am. Comp., ¶ 63)  Reputable ABA treatment and training is available in Michigan from facilities managed and staffed by clinicians with considerable education, certifications, and training in ABA techniques.  (Am. Comp., ¶ 66)  One such program in Michigan is the "HOPE" program at Beaumont Hospital's Center for Human Development, in which the child has participated, and for which Continental Automotive has not provided coverage.  (Am. Comp., ¶ 69)

Boyle claims that despite the State of North Carolina's finding that ABA is not an experimental treatment, Continental denies coverage in violation of ERISA and provisions of the Plan. (Am. Comp., ¶ 71)  Continental wrongfully denies coverage on the bad faith basis that ABA is "experimental" or "investigative," despite the multitude of studies showing, among other things, the efficacy of ABA treatment and repeated rulings by the State of Michigan's Insurance Commissioner that ABA is a reasonable, safe, and necessary treatment for children with autism. (Am. Comp., ¶ 77)  Continental has also wrongfully denied coverage of ABA on other baseless grounds, including intentionally misconstruing the terms of the Plans, including advising Boyle that similar treatment is available within the network. (Am. Comp., ¶ 78)  Continental has failed to provide any explanation or evidence in support of its claim that ABA treatment is available within the network. (Am. Comp., ¶ 79)  Boyle claims he has exhausted all of his administrative remedies. (Am. Comp., ¶ 82)

## II.   ANALYSIS

### A.   Standard of Review

Section 1132 is the civil enforcement provision of ERISA which states, "[a] civil action may be brought ... by a participant or beneficiary ... to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan." 29 U.S.C. § 1132(a)(1)(B).  A denial of benefits under an ERISA plan "is to be reviewed under a *de novo* standard unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan." *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 103, 115 (1989).  If a plan gives the administrator such discretion the administrator's decision is reviewed under the "highly deferential

arbitrary and capricious standard." *Miller v. Metropolitan Life Ins. Co.*, 925 F.2d 979, 983 (6th Cir. 1991). Such decisions are not arbitrary and capricious if they are "rational in light of the plan's provisions." *Id.* at 984. "Discretionary authority" does not hinge on the word "discretion" or any other "magic word." *Perez v. Aetna Life Ins. Co.*, 150 F.3d 550, 555 (6th Cir. 1998)(en banc). Instead, the lower courts are to focus on the breadth of the administrator's power–their authority "to determine eligibility for benefits or to construe the terms of the plan." *Id.*

In *Wilkins v. Baptist Healthcare System, Inc.*, 150 F.3d 609 (6th Cir. 1998), pursuant to a majority decision, the panel set forth "Suggested Guidelines" to adjudicate ERISA actions. The Sixth Circuit stated that the Rule 56 Summary Judgment procedure is "inapposite to the adjudication of an ERISA action" because of the Circuit's "precedents [which] preclude an ERISA action from being heard by the district court as a regular bench trial." *Wilkins*, 150 F.3d at 619.[2] "[I]t makes little sense to deal with such an action by engaging a procedure designed solely to determine 'whether there is a genuine issue for trial.'" *Id.* The district court should not use neither the summary judgment nor the bench trial procedures in deciding ERISA actions. *Id.* at 620. As to the merits of the case, the district court should conduct a review based solely upon the administrative record and render findings of fact and conclusions of law. *Id.* at 619. If a procedural challenge is alleged, such as lack of due process afforded by the administrator or bias on its part, only then may the district court consider evidence outside to the administrative record. *Id.* The discovery phase in an ERISA action will only cover the exchange of administrative record, and, if there is a procedural due process claim against the administrator, discovery is limited to evidence related to

---

[2] An ERISA claim is equitable in nature and is not eligible for a *jury* trial. *Wilkins*, 150 F.3d at 616, *citing Bair v. General Motors Corp.*, 895 F.2d 1094, 1096 (6th Cir. 1990).

procedural challenges. *Id.*

### B. Review of Plan Administrator's Decision

The parties agree that the standard of review in this case is the arbitrary and capricious standard. Continental claims that it adopted a self-funded plan administered by BC/BS-NC effective January 1, 2008. (2008 Plan) BC/BS-NC has the authority to make reasonable determinations in the administration of coverage and these determinations are final. *Id.* at 31. The determinations include decisions concerning coverage of services, care, treatment or supplies, and reasonableness of charges. *Id.* Once Continental adopted a self-funded Plan, the service provider at issue, HOPE, was no longer paid for the services at issue.

Boyle filed a Level I Grievance which was denied by letter dated May 12, 2010. (AR000065) The letter indicates that the services were provided by an out of network provider and were not eligible for reimbursement. *Id.* The Level II Grievance reviewed by an outside reviewer was denied on December 30, 2010. (AR000160) The denial was again based on the fact that the services were provided by an out of network provider. It was recommended by the Reviewer that during the transition period into the self-funded plan, between January 2008 through March 2008, any services rendered during that time should be reimbursed; otherwise the claim was denied. (AR000167)

Boyle argues that despite the Plan's assertions that it does not cover "out of network" treatment, the Plan sets forth Out-Of-Network Benefit Exceptions, which states, "In an *emergency,* in situations where *in-network providers* are not reasonably available as determined by BCBSNC's access to care of standards, or in continuity of care situations, *out-of-network* benefits will be paid at your *in-network copayment* or *coinsurance* and will be based on the billed amount." (AR000092)

Boyle claims that there are "ABSOLUTELY" no "in-network" providers providing similar care and treatment, such as the HOPE program, which is a unique program in Michigan. Boyle asserts that there are only 5 other certified providers of ABA in Southeastern Michigan, none of which are in network with BC/BS-NC. Boyle further asserts that there is "NOTHING" in the record that indicates that BC/BS-NC offered any provider who could continue the ABA treatment that his son was receiving in the HOPE program. Contrary to Boyle's assertion in his brief, the record indicates and identifies in network ABA providers. (AR 000072, 158-159)

The Plan provides that there are no benefits for services from out of network providers. (2008 Plan, AR000169, pp. 1, 3, 7, 23) The Plan Administrator, BC/BS-NC, determined that the child was receiving services from out of network providers, which Boyle agrees was so but argues that BC/BS-NC should still cover the services. Boyle submits various exhibits which are outside the Administrative Record, which the Court cannot consider.

Boyle refers to an affidavit on the record from Lori Warner, Ph.D, which he claims asserts that there are no in network providers providing the same services. (AR 000128-129) Dr. Warner's affidavit indicates that the Group Intensive Family Training or GIFT program is a unique program offered at William Beaumont Hospital and the HOPE Centers and that such program is not offered through the services of any other provider in Southeastern Michigan. (*Id.*) Dr. Warner indicates that the child began the GIFT program on November 26, 2007 and completed the program on February 22, 2008. (*Id.*) Although the GIFT program may be unique, Dr. Warner's affidavit does not indicate that there are no other ABA *providers* in the Southeastern Michigan area, as argued by Boyle. Dr. Warner's affidavit does not contradict the Plan Administrator's decision that the provider was an out of network service and that there are available in network providers in the area. However, any

7

request for benefits as to the treatment received through the GIFT program is moot, given that Continental agreed to cover services through March 31, 2008, during the transition of the self-funded Plan. As noted by Dr. Warner, the child completed the GIFT program on February 22, 2008. Any services rendered by the HOPE Center prior to the March 31, 2008 date would be covered.[3]

Based on the Plan language and a Review of the Administrative Record, the Administrator's decision to deny coverage after the transition period ending in March 31, 2008 was not arbitrary and capricious. As admitted by Boyle, the services rendered by the HOPE Center are out of network services. The Administrator cannot go beyond the Plan language and was within its discretion in denying the out of network services. The Administrator's decision must be affirmed.

## III. CONCLUSION

For the reasons set forth above,

IT IS ORDERED that the Motion to Affirm Plan Administrator's Denial of Benefits **(Doc. No. 12, filed September 1, 2011)** is GRANTED.

IT IS FURTHER ORDERED that this action is DISMISSED with prejudice.


Dated: November 30, 2011                        S/Denise Page Hood
                                                Denise Page Hood
                                                United States District Judge


I hereby certify that a copy of the foregoing document was served upon counsel of record on November 30, 2011, by electronic and/or ordinary mail.

                        S/LaShawn R. Saulsberry
                        Case Manager

---

[3] Continental submitted a copy of a negotiated check payable to Christopher Boyle dated October 14, 2011 reimbursing the claim for the services provided through March 31, 2008. (Doc. No. 19, filed 11/16/2011)